Garcia v Garcia (2020 NY Slip Op 05725)





Garcia v Garcia


2020 NY Slip Op 05725


Decided on October 14, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 14, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
HECTOR D. LASALLE
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2017-03930
 (Index Nos. 24618/10, 28956/10)

[*1]Michael J. Garcia, etc., respondent 
v
Peter Garcia, appellant. (Action No. 1.)
Peter J. Garcia, appellant,
v
Michael Garcia, et al., respondents, et al., defendants. (Action No. 2.) 


 Michael T. Sucher, Brooklyn, NY (Andrew M. Shabasson of counsel), for appellant.
Dunnington, Bartholow & Miller, LLP, New York, NY (Robert N. Swetnick and Norman A. Olch of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, conversion, and breach of fiduciary duty (Action No. 1), and a related action, inter alia, to dissolve certain closely held corporations (Action No. 2), which were joined for trial, Peter Garcia, the defendant in Action No. 1 and the plaintiff in Action No. 2, appeals from stated portions of a judgment of the Supreme Court, Kings County (Lawrence Knipel, J.), dated March 1, 2017. The judgment, upon a decision of the same court (Nina Kurtz, Ct. Atty. Ref.) dated February 16, 2016, made after a framed-issue hearing, and after a nonjury trial, inter alia, is in favor of Peter Garcia and against JMP Properties, LLC, a defendant in Action No. 2, in the sum of only $2,185,412, and in favor of Peter Garcia and against All-Boro Management Co., LLC, a defendant in Action No. 2, in the sum of only $200,904.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
This appeal concerns two family-run limited liability companies (hereinafter LLCs) that were formed for the purpose of owning and operating residential real properties in Brooklyn. JMP Properties, LLC (hereinafter JMP), and All-Boro Management Co., LLC (hereinafter AB), had identical membership, and both functioned in the same manner as far as day-to-day operations were concerned. The LLCs' members were Peter Garcia, his brother Joaquin Garcia, and Joaquin's son/Peter's nephew, Michael Garcia. Under the original operating agreements for JMP and AB, Joaquin, Michael, and Peter were the only members, and each had an equal one-third membership interest. Under the original operating agreements, each member was to receive a distribution of one third of the profits of JMP and AB annually. Peter was in charge of all financial aspects of the companies, including, inter alia, overseeing the books and records and dealing with the companies' accountants and attorneys, while Michael and Joaquin handled the maintenance of the buildings and tenant relationships.
In 2010, the family members agreed to separate and split up the assets of JMP and [*2]AB. At that time, through Michael's investigation of the books and records, it was discovered that Peter had diverted a large sum of money over time to himself, without anyone's knowledge or consent. Immediately following the discovery of Peter's diversion of funds, AB and JMP, by resolutions signed by Michael and Joaquin, inter alia, barred Peter from the offices of the companies and removed him as a signatory authority on the companies' bank accounts. In August 2011, JMP and AB, by way of notices signed by Joaquin and Michael, gave Peter notice that a meeting would be held on August 19, 2011, to determine whether Peter should be expelled as a member and manager of JMP and AB. At that meeting, which was attended by all three Garcias, Joaquin and Michael passed resolutions expelling Peter as a member and manager from JMP and AB based upon his unauthorized withdrawal and use of company funds.
Joaquin and Michael commenced Action No. 1 to recover those improperly diverted monies and asserted causes of action alleging, among other things, breach of contract, conversion, and breach of fiduciary duty. Peter commenced Action No. 2 soon thereafter and sought, inter alia, judicial dissolution of JMP and AB, an accounting, and the appointment of a receiver. A framed-issue hearing was held before a Special Referee to determine whether Peter was properly expelled from JMP and AB. The Special Referee heard the testimony of, among others, Michael, Joaquin, and Peter. At the conclusion, the Special Referee determined that Peter had been properly expelled from JMP and AB.
The parties then proceeded to a damages trial, whereat competing experts testified to the valuation of each LLC on the date Peter was expelled, for the purpose of determining exactly what was owed to Peter for his membership interest. At the conclusion of the damages trial, the Supreme Court set a valuation that was closer to the valuation of Michael and Joaquin's appraiser than it was to the valuation of Peter's appraiser. The court also held that weekly payments that had been made to Peter beginning in January 2011, during the pendency of the actions, must be repaid by Peter as loans. The court directed the parties to settle judgment, and each side submitted proposed judgments and submissions detailing and supporting the figures contained therein.
In a judgment dated March 1, 2017, the Supreme Court, inter alia, adjudged and declared that, as of August 19, 2011, Peter owned a one-third membership interest in JMP and awarded him the sum of $2,185,412 against JMP. The court also adjudged and declared that, as of August 19, 2011, Peter owned a 45% membership interest in AB and awarded him the sum of $200,904 against AB. Peter appeals. Joaquin died during the pendency of this appeal, and Michael, as executor of Joaquin's estate, was substituted for him.
Peter's contention that the Special Referee erred in concluding that he had been properly expelled from JMP and AB is without merit. A limited liability company is a hybrid business entity having attributes of both a corporation and a partnership (see Rimawi v Atkins, 42 AD3d 799, 801), and it is governed by the Limited Liability Company Law for its operation, conduct, duties, powers, and rights of its members. The Limited Liability Company Law, however, allows the members to enter into an operating agreement wherein the members can agree to certain terms, conduct, and provisions for operating the business (see Limited Liability Company Law § 417). The statute reflects legislative deference to the parties' contractual agreement, while also providing a default procedure when there is no operating agreement in place or such agreement does not address certain subjects (see Manitaras v Beusman, 56 AD3d 735).
Here, contrary to Peter's contention, the operating agreements for both JMP and AB did state that dissociation of a member would occur upon the expulsion of said member and, thus, the inclusion of that language in the operating agreement clearly and unambiguously established the parties' intent to allow for the removal of a member (see Ross v Nelson, 54 AD3d 258). Although the operating agreements did not contain a detailed mechanism for expulsion, and the Limited Liability Company Law does not contain a default provision that could gap-fill, expulsion could nevertheless be accomplished under the procedures contained in the operating agreements. The operating agreements each provided that any action taken on behalf of the LLC was to be taken by a majority vote of the members. It is undisputed that Michael and Joaquin each voted to expel Peter at duly noticed meetings of the LLCs, which Peter attended (see Limited Liability Company Law §§ [*3]402, 403, 404). As such, we agree with the Special Referee's conclusion that Peter's expulsion was proper under the terms and provisions of the operating agreements.
Peter's reliance upon Man Choi Chiu v Chiu (71 AD3d 646) is misplaced and unavailing. In that case, it was undisputed by the parties that the LLC's articles of organization and alleged operating agreement did not cover expulsion of members. Here, in contrast to the facts of Man Choi Chiu, the operating agreements at issue did contain a provision concerning expulsion of members, and the members utilized the provisions and mechanisms contained in the operating agreements to take action on behalf of the LLCs to expel Peter themselves, by vote of the majority of membership interest holders.
Similarly without merit are Peter's contentions that the judgment entered did not properly account for the value of his membership interests at the time he was expelled from JMP and AB. In reviewing a determination made after a nonjury trial, this Court's power is as broad as that of the trial court. Thus, this Court may render the judgment it finds warranted by the facts, "taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [internal quotation marks omitted]; see Laffey v Laffey, 174 AD3d 586, 588-589). Contrary to Peter's contentions, inter alia, that his appraiser's valuation of the LLCs constituted the most accurate appraisal, that certain payments made to him during the pendency of the action should not be treated as loans, and that certain moneys taken from AB were investments made by AB and not loans taken by him, the Supreme Court providently exercised its discretion in entering judgment reflecting the value of Peter's membership interest in both LLCs on the date he was expelled, offset by the monies he diverted to himself during the course of his membership. Based upon our review of the evidence and testimony, we find no basis to disturb the court's determination (see Laffey v Laffey, 174 AD3d at 589).
The parties' remaining contentions are without merit.
RIVERA, J.P., LASALLE, BARROS and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court